UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-80013-CIV-MARRA/VITUNAC

GLOBAL PATENT HOLDINGS, LLC,

    Plaintiff,

v.

PANTHERS BRHC LLC, d/b/a THE BOCA
RATON RESORT & CLUB,

    Defendant.
_____/

**OPINION AND ORDER ON MOTION TO DISMISS**

THIS CAUSE comes before the Court on Defendant Panthers BRHC LLC's Motion to Dismiss Complaint (DE 7).  The motion is now fully briefed and is ripe for review.  The Court held oral argument on the motion on April 25, 2008.  The Court has carefully considered the motion and is otherwise fully advised in the premises.

**Background**

On January 8, 2008, Plaintiff Global Patent Holdings, LLC ("Plaintiff"), filed its Complaint (DE 1), alleging direct and indirect infringement of a patent by Defendant Panthers BRHC LLC ("Defendant") under 17 U.S.C. § 271.  Plaintiff subsequently amended the Complaint on February 6, 2008 (DE 19).

The facts, as alleged in the First Amended Complaint, are as follows: Plaintiff owns "full and exclusive right, title and interest" in U.S. Patent Number 5,253,341 C1, known as "Remote

Query Communication System" [hereinafter "'341 patent"]. (Compl. ¶ 1.)[1]  Originally issued on October 12, 1993, the '341 patent was reexamined by the Patent and Trademark Office, which confirmed the validity of the '341 patent on July 24, 2007.  (*Id.*)  Plaintiff states that Defendant "has directly infringed claim 17 of the '341 patent under 35 U.S.C. § 271(a) by downloading responsive data, including audio/visual and graphical presentations, such as JPEG images and/or other compressed data, on its website." (Compl. ¶ 8.)  The infringement takes place through the joint action of both Defendant and the website user, because Defendant's website "controls and directs the performance of each of the method steps of claim 17 which are not performed" by Defendant itself.  (Compl. ¶ 9.)  Specifically, Plaintiff alleges the following "control" over home users by Defendant:

> In order to control the execution of the programs which are executed on the user's computer, Boca Resort's website stores a set of computer programs which it then sends to the user's computer for execution by that computer.  Since the programs which the user's computer eventually executes are all supplied to the user's computer by Boca Resort's own

---

[1]The '341 patent now reads as follows:
17. A method for downloading responsive data from a remote server comprising the following steps:
(a) identifying a query via a data input means and inputting said query to remote query and data retrieval means;
(b) transmitting said query from said remote query and data retrieval means to said remote server via an input/output means;
(c) receiving a compressed or non-compressed response to said query at said remote query and data retrieval means from said remote server via said input/output means;
(d) displaying a presentation corresponding to said compressed or non-compressed response on output means;
(e) wherein said compressed or non-compressed response is compressed prior to receipt at said remote query and data retrieval means, and wherein said compressed response is decompressed at said remote query and data retrieval means using an asymmetric decompression technique corresponding to an inverse operation of the technique used to compress said compressed or non-compressed response.
(Compl. Ex. A.)

> website, operating on Boca Resort's own server, Boca Resort controls and
> directs the operation of those programs on the user's computer.  Nothing
> happens at the user's computer in connection with the method steps of
> claim 17 that is not a direct result of the execution of programs and
> website material supplied by Boca Resort's website.

(Compl. ¶ 9.)  Plaintiff alleges that step (a) of claim 17 of the '341 patent is controlled by Defendant, even though it is executed by a remote user's computer, because the remote user's computer "runs Javascript programs and renders html-based web page material which have been supplied to the user's computer by Boca Resort's website."  (Compl. ¶ 10.)

Defendant moves to dismiss the complaint as insufficient to state a claim for direct infringement.  Defendant argues that Plaintiff has not alleged that Defendant has performed each and every step of the patented claim, nor has Plaintiff alleged sufficient "direction or control" over third party "joint infringers" as recently elucidated by the Federal Circuit's holding in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

**Standard of Review**

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in

determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**Discussion**

In analyzing claims arising under the Patent Act, the Court is bound by decisions of the U.S. Court of Appeals for the Federal Circuit. *See Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (applying Federal Circuit law to patent issues but local circuit court law to procedural issues); 28 U.S.C. § 1295(a)(4)(C).

Direct infringement of a patent requires a party to perform all of the steps of the patented method. *Canton Bio Medical, Inc. v. Integrated Liner Technologies, Inc.*, 216 F.3d 1367, 1369-70 (Fed. Cir. 2000) ("Infringement of process inventions is subject to the 'all-elements rule' whereby each of the claimed steps of a patented process must be performed in an infringing process . . . ."). In *BMC Resources*, the Federal Circuit addressed the situation where a party does not perform each and every step herself but instead directs a third party to carry out certain steps. *BMC Resources*, 498 F.3d at 1379. The Federal Circuit did not retreat from its prior rulings that "infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention." *Id*. at 1380. The court likewise recognized the limits of vicarious liability for patent infringement, because a finding of indirect infringement requires a "predicate finding of direct infringement," which thus requires a finding that one party practiced each element of the patented process. *Id.*

The Federal Circuit noted that other courts "faced with a divided infringement theory have also generally refused to find liability where one party did not control or direct each step of the patented process." *Id.* Thus, only if the Court finds that one party "directed or controlled" a

4

third party may the original party be held liable for direct infringement. *Id.* at 1381-82.

The Federal Circuit did not explain with any specificity what it meant by "direction or control." The Federal Circuit did hold, however, that "[a] party cannot avoid infringement . . . simply by contracting out steps of a patented process to another entity." *Id.* at 1381. In analyzing the specific facts of *BMC Resources*, the court also stated that "the record contained no evidence even of a contractual relationship between [the defendant] and the financial institutions." *Id.* at 1382. The court also explained that "the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party." *Id.* at 1379. Because there was no evidence to hold that the defendant was "vicariously responsible for the actions of the unrelated parties who carried out the other steps" of the method claim, no infringement could be found. *Id.* at 1375. In the recent case of *Muniauction, Inc. v. Thomson Corp.*, - - F.3d - -, No. 2007-1485, 2008 WL 2717689 at *9 (Fed. Cir. July 14, 2008), the Federal Circuit reaffirmed the principle that where the relationship between the alleged direct infringer and the third party who completes performance of the claimed method rises to the level of vicarious liability, direct infringement can be found. ("Under *BMC Resources*, the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method.").[2]

---

[2]At oral argument, Plaintiff referred the Court to *Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477 (W.D. Pa. 2007), where the court find joint infringement of the patent by the defendant, "the bidders to whom they charge a fee for their services, and the issuers for whom they facilitate auctions." The district court's decision in *Muniauction* was rendered before *BMC Resources*, and the court stated that "direct control" need not be demonstrated to show infringement by related parties. *Id.* at 492. *BMC Resources*, however, requires a finding of "direction or control." In reversing the district court's opinion in *Muniauction*, the Federal

From these statements, it appears that the level of "direction or control" the Federal Circuit intended was not mere guidance or instruction in how to conduct some of the steps of the method patent. Instead, the court indicates that the third party must perform the steps of the patented process by virtue of a contractual obligation or other relationship that gives rise to vicarious liability in order for a court to find "direction or control." Without this kind of relationship, the Court does not believe that a finding of "joint infringement" is warranted under *BMC Resources*.

The parties agree that the '341 patent requires two individuals or entities to complete all of the method's steps (at least in terms of Defendant's alleged infringement) – a remote computer user, and the website server. Further, at oral argument, Plaintiff conceded that the patented method does not begin until a computer user visits Defendant's website. If no person ever visited Defendant's website, then Plaintiff's patent would never be infringed. The initial step of the '341 patent calls for action on the part of the remote computer user. Plaintiff claims that this action is "controlled" by Defendant because Defendant puts Javascript programs on the remote user's computer to allow the process to begin. Nevertheless, the Court does not believe this "control" is sufficient "direction or control" over the remote computer user. Plaintiff has, in no way, alleged that remote users are contractually bound to visit the website, it has not alleged that the remote users are Defendant's agents who visit the website within the scope of their agency relationship nor has it alleged any facts which would render Defendant otherwise vicariously liable for the acts of the remote user. Using Plaintiff's analogy, Defendant may give home users

---

Circuit held that the district court applied the incorrect standard regarding "direction or control." *See Muniauction*, 2008 WL 2717689 at *8-9.

the keys to the truck, but home users have no obligation to use those keys to start the truck and drive away.

In this case, the patented process cannot start until the remote user visits Defendant's website. Plaintiff has not alleged that these individuals visit Defendant's website under Defendant's "direction or control." Therefore, the Court cannot conclude that Defendant and the remote users are "joint infringers" under *BMC Resources*. Since Plaintiff has not alleged sufficiently that Defendant is a joint infringer, and Plaintiff has not alleged that Defendant carries out all the steps of the patented method, Plaintiff's claim for direct patent infringement must be dismissed as inadequate.

Additionally, Plaintiff cannot state a claim for indirect infringement. A claim for indirect patent infringement requires a showing of specific intent to encourage another to infringe the patent as well as a predicate finding of direct infringement by some party. *Symantec Corp. v. Computer Associates International, Inc.*, 522 F.3d 1279, 1292 (Fed. Cir. 2008); *see also Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F. 3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement."). Plaintiff has alleged Defendant had a specific intent to induce others to infringe the '341 patent (*see* Compl. ¶ 11), but Plaintiff has not sufficiently alleged a predicate finding of direct infringement. Accordingly, all allegations of indirect patent infringement must also be dismissed.

**Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss

(DE 7) is **GRANTED**.  At oral argument, Plaintiff represented to the Court that leave to amend the complaint would be futile.  As such, Plaintiff's First Amended Complaint (DE 19) is **DISMISSED WITH PREJUDICE**.  All other pending motions are **DENIED AS MOOT**.  The Clerk shall **CLOSE THIS CASE**.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 12th day of August, 2008.

Copies furnished to:  
all counsel of record

KENNETH A. MARRA  
United States District Judge